1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MORGAN JAMES KANE,

11              Petitioner,              No.  CIV S-11-0888 MCE CKD P

12       vs.

13   S. SALINAS,

14
                                          FINDINGS AND RECOMMENDATIONS
15              Respondent.
     _____/

16              Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the October 2009 decision by the

18   Board of Parole Hearings ("Board") finding him unsuitable for parole.  He claims that the

19   Board's five-year denial violated his due process rights and the ex post facto clause of the

20   Constitution.  Pending is respondent's August 18, 2011 motion to dismiss the petition for failure

21   to state a cognizable claim for federal habeas relief.  Petitioner filed an opposition on September

22   9, 2011.  Upon careful consideration of the record and the applicable law, the undersigned will

23   recommend that respondent's motion to dismiss be granted.

24                          PROCEDURAL BACKGROUND

25              In 1984, petitioner pled guilty to first degree murder, forgery, and attempted

26   forgery, and was sentenced to a state prison term of twenty-five years to life plus two years.

1

1   (Dkt. No. 1 ("Ptn.") at 1.)  On October 23, 2009, the Board held a subsequent parole hearing at

2   which it found petitioner unsuitable for parole and issued a five-year denial.  (Dkt. 13-1 at 83-

3   92.)

4           Petitioner filed three state habeas petitions challenging the Board's 2009 decision.

5   He filed a petition in the Fresno County Superior Court, which was denied on February 5, 2010.

6   (Ptn. at 2-3.)  He next filed a petition in the California Court of Appeal, Fifth Appellate District,

7   which was denied on May 5, 2010.  (Id. at 3.)  He then filed a petition in the California Supreme

8   Court, which was denied on February 16, 2011.  (Id. at 3, 41.)

9           On April 4, 2011, petitioner commenced this action by filing the instant petition.

10   Respondent filed a motion to dismiss on August 18, 2011, and petitioner filed a response on

11   September 9, 2011.

12                      ANALYSIS

13   I.  Standards of Review Applicable to Habeas Corpus Claims

14           A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

15   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

16   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

17   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

18   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

19   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

20   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

21   (1972).

22           This action is governed by the Antiterrorism and Effective Death Penalty Act of

23   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

24   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

25   habeas corpus relief:

26                 An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall
not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
claim -

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

(2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we

may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,

we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state

court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  See also Barker v.

Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated

a claim, we analyze the last reasoned decision").  If the last reasoned state court decision adopts

or substantially incorporates the reasoning from a previous state court decision, this court may

consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque,

475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the

merits but provides no reasoning to support its conclusion, a federal habeas court independently

reviews the record to determine whether habeas corpus relief is available under § 2254(d).

Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167

(9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's

claim the AEDPA's deferential standard does not apply and a federal habeas court must review

3

1   the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

2   II.  Due Process Claim

3           Petitioner asserts that the Board's decision was not supported by "some evidence"

4   that his release posed a risk to public safety as required by state law and in violation of his

5   constitutional right to due process.

6           The Due Process Clause of the Fourteenth Amendment prohibits state action that

7   deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

8   due process violation must first demonstrate that he was deprived of a liberty or property interest

9   protected by the Due Process Clause and then show that the procedures attendant upon the

10  deprivation were not constitutionally sufficient.  Kentucky Dep't. of Corrections v. Thompson,

11  490 U.S. 454, 459-60 (1989).

12          A protected liberty interest may arise from either the Due Process Clause of the

13  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

14  expectation or interest created by state laws or policies." Wilkinson v. Austin,  545 U.S. 209,

15  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

16  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

17  one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

18  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

19  person to be conditionally released before the expiration of a valid sentence.").  However, a

20  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

21  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

22  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

23          California's parole scheme gives rise to a liberty interest in parole protected by the

24  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

25  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  In California, a prisoner is

26  entitled to release on parole unless there is "some evidence" of his or her current dangerousness.

1    In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-

2    53 (2002).

3              In Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861 (2011), the Supreme

4    Court reviewed two cases in which California prisoners were denied parole – in one case by the

5    Board, and in the other by the Governor after the Board had granted parole.  Swarthout, 131 S.

6    Ct. at 860-61.  The Supreme Court noted that when state law creates a liberty interest, the Due

7    Process Clause of the Fourteenth Amendment requires fair procedures, "and federal courts will

8    review the application of those constitutionally required procedures."  Id. at 862.  The Court

9    concluded that in the parole context, however, "the procedures required are minimal" and that the

10   "Constitution does not require more" than "an opportunity to be heard" and being "provided a

11   statement of the reasons why parole was denied."  Id. (citing Greenholtz, 442 U.S. at 16).  The

12   Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal

13   procedural requirements and "reviewed the state courts' decisions on the merits and concluded

14   that they had unreasonably determined the facts in light of the evidence."  Swarthout, 131 S. Ct.

15   at 862.  In particular, the Supreme Court rejected the application of the "some evidence" standard

16   to parole decisions by the California courts as a component of the federal due process standard.

17   Id. at 862-63.  See also Pearson, 2011 WL 1238007 at *4.

18              Here, the record establishes that petitioner chose to represent himself at the

19   October 2009 hearing, received a packet of written material in advance of the hearing, and had

20   the opportunity to examine it prior to the hearing.  (Dkt. 13-1 at 7.)  The record also establishes

21   that petitioner was heard at the hearing and received a statement of reasons why the Board panel

22   decided to deny him parole.  (Dkt. 13-1 at 2-92.)  Petitioner thus received all the process due him

23   under the Constitution.  Swarthout, 131 S. Ct. 862; see also Miller, 2011 WL 1533512, at *5;

24   Roberts,2011 WL 1365811, at *3; Pearson, 2011 WL 1238007, at *3.  His due process claim

25   must be dismissed.

26   ////

1    III.  Marsy's Law Claim

2            Petitioner also alleges that the Board issued its five-year denial pursuant to

3    California's Proposition 9 ("Marsy's Law") in violation of the ex post facto clause of the U.S.

4    Constitution.  Petitioner asserts that Marsy's Law retroactively increased the punishment he

5    received when he was sentenced in 1984.

6            California voters passed the "Victims' Bill of Rights Act of 2008," otherwise

7    known as "Marsy's Law."  Under California law as it existed prior to the enactment of Marsy's

8    Law, indeterminately-sentenced inmates, such as petitioner, were denied parole for one year

9    unless the parole hearing panel found it unreasonable to expect that parole could be granted the

10   following year, in which case the subsequent hearing could be delayed up to five years.  Cal.

11   Penal Code § 3041.5(b)(2) (2008).  At his 2009 parole hearing, petitioner was subject to the

12   terms of Marsy's Law, which authorizes denial of a subsequent parole hearing for a period of up

13   to fifteen years.  Cal. Pen. Code, § 3041.5(b)(3).  The shortest interval that the parole hearing

14   panel may set is three years, applied to petitioner herein, based on a finding that petitioner "does

15   not require a more lengthy period of incarceration . . . than seven additional years."  Cal. Pen.

16   Code, § 3041.5(b)(3)(c).

17           Petitioner states that he presented his ex post facto claim to all three levels of

18   California's courts, and all three denied it.[1]  (Ptn. at 2-3.)  Section 2254(d)(1) bars federal habeas

19   relief unless the state courts' decision was "contrary to, or involved an unreasonable application

20   of, clearly established Federal law, as determined by the Supreme Court of the United States."

21

22           [1] As neither party has attached the decisions of the Fresno County Superior Court and the
     California Court of Appeal, Fifth Appellate District, they are not part of the record before the
23   court.  However, the undersigned may nonetheless consider whether the state courts' decision to
     deny petitioner's Marsy's Law claim was unreasonable pursuant to section 2254.  Indeed,
24   Marsy's Law claims such as petitioner's are often resolved at the screening stage pursuant to
     Rule 4 of the Rules Governing Section 2254 Cases.  See e.g., Stewart v. Hense, 2011 WL
25   5024454 (E.D.Cal. Oct. 20, 2011) (summary dismissal of claim that Board's application of
     Marsy's Law violated ex post facto clause); DeLeon v. Hartley, 2011 WL 2143518 (E.D. Cal.
26   May 13, 2011) (same).

1    Clearly established federal law, as determined by Supreme Court, is as follows with respect to

2    petitioner's ex post facto claims.  A law violates the Ex Post Facto Clause if it:  (1) punishes as

3    criminal an act that was not criminal when it was committed; (2) makes a crime's punishment

4    greater than when the crime was committed; or (3) deprives a person of a defense available at the

5    time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).  A court may

6    find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the

7    measure of punishment attached to the covered crimes."  California Dep't of Corrections v.

8    Morales, 514 U.S. 499, 509 (1995).  The Court has not articulated a specific formula for

9    "identifying those legislative changes that have a sufficient effect on . . . punishments to fall

10   within the constitutional prohibition on [ex post facto laws]."  Id.  However, the court has found

11   that changes that create only the most "speculative and attenuated possibility of producing the

12   prohibited effect" of increasing punishment do not run afoul of the ex post facto clause.  Id.; See

13   Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at minimum

14   create "significant risk of prolonging . . . incarceration" to constitute a violation of the Ex Post

15   Facto Clause).

16          The Supreme Court has not directly addressed whether application of Marsy's

17   Law to persons convicted prior to its enactment constitutes the sufficient risk of increased

18   punishment prohibited by the Ex Post Facto Clause.  However, the Court has addressed an ex

19   post facto challenge to a change in California law concerning the frequency of parole hearings.

20   In Morales, 514 U.S. at 514, the court found that a 1981 amendment to Section 3041.5, which

21   increased maximum deferral period of parole suitability hearings to certain individuals from one

22   to three years, did not violate the Ex Post Facto Clause.  Among other things, the court found the

23   fact that an inmate could always seek an expedited hearing if the inmate felt that, between

24   scheduled hearings, circumstances had changed to the point that he or she might at that time be

25   found suitable for parole.  Id. at 512-13.  Considering this fact, the Court found: "there is no

26   reason to conclude that the amendment will have any effect on any prisoner's actual term of

7

1   confinement . . ." Id. at 512.

2          Also, in Garner v. Jones, 529 U.S. 244 (2000), the Court upheld Georgia's change

3   in the frequency of parole hearings for prisoners serving life sentences from three to eight years

4   in the face of an ex post facto challenge.  Again, the Court found it significant that inmates could

5   seek an expedited hearing in the event of a change of circumstances:

6                  On the record in this case, we cannot conclude the change in
                   Georgia law lengthened respondent's time of actual imprisonment.
7                  Georgia law vests broad discretion with the Board, and our analysis
                   rests upon the premise that the Board exercises its discretion in
8                  accordance with its assessment of each inmate's likelihood of
                   release between reconsideration dates.  If the assessment later turns
9                  out not to hold true for particular inmates, they may invoke the
                   policy the Parole Board has adopted to permit expedited
10                 consideration in the event of a change in circumstances.

11  Id. at 256.

12         Here, as indicated above, the changes to the frequency of parole hearings are more

13  extensive than in Morales and Garner and can potentially result in subsequent parole hearings

14  occurring as much as fifteen years after the prior hearing.[2]  However, as in Morales and Garner,

15  the parole board concerned, in this case the California Board of Parole Hearings post-Marsy's

16  Law, has the ability to advance a parole suitability hearing when "a change in circumstances or

17  new information" essentially establishes a reasonable likelihood that an inmate will be found

18  suitable for parole.  Cal. Pen. Code, § 3041.5(b)(4).

19         After reviewing the facts applicable to petitioner's ex post facto claim, clearly

20  established federal law as determined by the Supreme Court, and California statutes and

21  regulations related to the frequency with which parole hearings occurring after the first parole

22  hearing must be held, the court finds that the state court's decision rejecting petitioner's ex post

23  facto claim is not contrary to, nor does it involve an unreasonable application of clearly

24

25         [2]  See Gilman, 638 F.3d 1101, 1107-08 (9th Cir. 2011) for a detailed discussion of the
    differences between the statutes and regulations at issue in Morales, Garner, and in California
26  post-"Marsy's Law."

1   established federal law as determined by the Supreme Court.  Its conclusion is not out of line with

2   decisions reached by the Supreme Court in both <u>Morales</u> and <u>Garner</u>, especially in light of the fact

3   that, as in <u>Morales</u> and <u>Garner</u>, the parole board concerned can expedite a suitability hearing if the

4   board believes it is reasonable to assume that the inmate in question will be paroled.  Thus,

5   petitioner's ex post facto claim should be dismissed.[3]

6   IV.  <u>Plea Agreement</u>

7                Petitioner also claims in passing that the Board's October 2009 decision to deny

8   parole violated his plea agreement.  (Ptn. at 33-34.)  Respondent does not address these

9   allegations, and the court concludes that petitioner fails to allege facts that would entitle him to

10  habeas relief on this basis.  Petitioner himself states that was sentenced to twenty-five years to life

11  plus two years for first degree murder, forgery, and attempted forgery.  (<u>Id</u>. at 1.)  Generally, a

12  convicted person serving an indeterminate life term in state prison is not entitled to release on

13  parole until he is found suitable for such release by the Board.  Cal. Pen.Code § 3041(b);

14  Cal.Code of Regs., tit. 15, § 2402(a).  Here, the facts before the court do not warrant a conclusion

15  that the indeterminate sentence imposed was anything other than a sentence for the maximum

16  term of life, with a possibility of release on parole if petitioner were found suitable for such

17  release.  Nor does the record supply any basis for concluding that at the time the plea was entered,

18  objective manifestations of intent reflected that petitioner reasonably understood that he was

19  entitled to release on parole at any particular point in his indeterminate sentence.  <u>See</u> <u>West v.</u>

20  <u>Hartley</u>, 2011 WL 4628694 (E.D. Cal. Oct. 3, 2011) (summary dismissal of petitioner's claim that

21  Board's denial of parole violated plea agreement).  Thus this claim should be dismissed as well.

22  ////

23

24       [3]  Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court
     where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution.
     The name of the case is <u>Gilman v. Fisher</u>, CIV-S-05-0830 LKK GGH P and the class of persons
25   identified as plaintiffs in that action consist of California prisoners serving indeterminate
     sentences, who are eligible for parole and who have been denied parole on one or more occasion.
26   March 4, 2009 Order at 9.  It appears petitioner is a member of that class.

1    Accordingly, IT IS HEREBY RECOMMENDED that:

2        1.  Respondent's  motion to dismiss (Dkt. No. 13) be granted; and

3        2.  The petition (Dkt. No. 1) be dismissed and this action closed.

4    If petitioner files objections, he shall also address if a certificate of appealability

5    should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

6    U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

7    constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate

8    which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

9        These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11   days after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within fourteen days after service of the objections.  The parties are

15   advised that failure to file objections within the specified time may waive the right to appeal the

16   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17    Dated: November 2, 2011

18                                          _____
                                           CAROLYN K. DELANEY
19                                          UNITED STATES MAGISTRATE JUDGE

20

21

22   2
     kane0888.mtd
23

24

25

26

                                           10